MEAD REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25177.   Promulgated January 6, 1931.

*Christy M. Farrar, Esq.*, and *Joseph C. Miller, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

TRUSSELL: The petitioner offers eight contentions, but it appears at once upon examination of the record that they relate to but three major issues, which may be summarized as follows: (1) Raised in contention No. 1: petitioner was not accorded a hearing by the Commissioner prior to the assessment of the deficiencies; (2) raised in various details in contentions No. 2 to No. 7, inclusive: the basis for the computation of the profits derived by the petitioner from sales of lots in a certain subdivision should be that of the prior owners who turned the land over to the petitioner for capital stock; (3) raised in contention No. 8: in the alternative, if the basis used by the respondent is approved in principle, then it should be increased in amount by three certain items of claimed expense or loss.

In the first issue the petitioner complains of a failure to accord the petitioner a hearing before the Commissioner in Washington following upon a hearing before the revenue agent in the field. The petition was voluntarily filed within the statutory 60-day period, and the petitioner has been accorded full opportunity at a hearing before this Board on the merits. No mention of this issue is made in the brief filed on behalf of the petitioner, and we are not informed of the significance of the allegation. On the face of the petition it would appear that the complaint is addressed to some matter of office procedure with which we have nothing to do.

In the second issue the major point involved is the contention of the petitioner that by reason of a chain of transactions involving the title to a certain tract of land, and culminating in the transfer of the land to the petitioner in exchange for the capital stock of the petitioner, all as detailed in the findings, it follows that the profit to the petitioner in the taxable years derived from sales of parcels of the land should be computed for income-tax purposes upon the basis which would have been allowable to the transferors.

The petitioner cites the provisions of the Revenue Act of 1921, reading as follows:

SEC. 202. (c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

\* \* \* \* \* \* \*

(3) When (A) a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, " in control " of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

\* \* \* \* \* \* \*

(d) (1) Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e) ; \* \* \*

The petitioner interprets these provisions to mean that no profit or loss is to be recognized in the transfer of the land to the petitioner for its stock; consequently, the land while in the hands of the petitioner takes the basis properly allowable for income-tax purposes to the transferors previous to the transfer.

The position of the respondent is that the petitioner is a separate entity organized and incorporated in 1916, at which time it acquired the property here under consideration, and, in consequence, under the Revenue Act of 1921 it can not go beyond 1916 to arrive at a basis for taxation.

In the brief filed on behalf of the petitioner it is admitted that this position is not understood, and indeed this is readily apparent. The petitioner mistakes the applicable statutory provisions. The transactions here under consideration are the sales by the petitioner for considerations payable in cash (it matters not whether all paid

down or through an agreed schedule of deferred payments), and the pertinent provision of the Revenue Act is as follows:

SEC. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property.

We know of no authority under the Revenue Act of 1921 which, under the facts in this case, authorizes a disregard of the separate entity of the corporation, or is retroactive to 1916 by implication, resulting in the use of the basis of the transferor and the disregard of the profit or the loss recognizable in the exchange under section 2 of the Revenue Act of 1916. The provision of the 1924 Revenue Act, section 204 (a) (8), which does provide such an authorization is not retroactive with respect to net income of prior years. *L. H. Philo Corporation*, 16 B. T. A. 130. The proper basis to this petitioner, under the 1921 Act, is its cost. There is no evidence to show that the petitioner, at the time of acquisition of the land, had other assets, and there is no basis for a claim that the stock it gave for the land was worth any more or any less than the value of the land, consequently the petitioner's original cost must be taken as equaling the value of the land when acquired. *Realty Sales Co.*, 10 B. T. A. 1217; *John Glackner Realty Corporation*, 11 B. T. A. 151, and the cases cited therein; *L. H. Philo Corporation, supra; Seymour Manufacturing Co.*, 19 B. T. A. 1280, 1285. It follows that we must approve the action of the respondent in basing his computation on the value of the property when paid in, plus any allowable subsequent costs. After careful consideration of all of the evidence touching on the value of the land when acquired by the petitioner, we are satisfied that it amounted to $68,023.16, which, according to the oral statements of counsel at the hearing, equals the amount of the basis recognized by the respondent. Our conclusions render unnecessary a detailed consideration of the various matters raised in contentions No. 2 to No. 7, inclusive, all of which relate to the extremely involved and devious route by which the petitioner desires to lead us to a disregard of intermediate transactions and to a recognition of a basis for the transferors of the value of the land as of March 1, 1913, although on that date the transferors did not hold title to the property, and, furthermore, to an amount of such value which we think is not satisfactorily supported by the evidence.

In the third issue the petitioner contends, in the alternative, in event that we approve in principle the basis adopted by the respondent, that three certain items should be added to the amount of the basis used by the respondent in his computation.

The first item is an amount of loss claimed by the transferors to have been sustained prior to the transfer of the land to the petitioner

through the destruction by fire of the family dwelling formerly standing upon the land and estimated to be the excess of the fair value of the dwelling over and above the amount of insurance recovered by the transferors.

The second item is the amount of the cash proceeds received by the transferors from purchasers other than the petitioner derived from the sales of 6½ acres of the land prior to the transfer of the remaining 93½ to the petitioner.

The third item is an amount of prospective—if you choose, imaginary—loss, which is not shown to have ever been sustained by anyone, attributable to bad management in subdividing the land long prior to its transfer to the petitioner, resulting in a failure to afford opportunity for the maximum possible aggregate of lot frontage, thus affecting the ultimate realization upon asking prices based on frontage.

We believe it is obviously unnecessary to go into detailed discussion of the items. The first, a loss by fire, and the second, a sale of property, are manifestly transactions with which, in point of fact, the petitioner has nothing whatever to do. The third may have had some effect, downward, however, upon the prospective value of the land when turned over to the petitioner. Certainly there is no basis for calling the prospective failure to derive a maximum profit cost to anyone, be it the transferors or the petitioner.

We conclude that there is no basis in fact or in law for this claim of the petitioner.

Toward the end of the hearing the respondent moved to increase the deficiencies to conform to the facts in evidence. A careful consideration of the record shows that there is no basis of fact before us to support a redetermination upward. The motion is, therefore, denied.

*Judgment will be entered pursuant to Rule 50.*